CILENTI & COOPER, PLLC
Justin Cilenti (GC2321)
Peter H. Cooper (PHC4714)
10 Grand Central
155 East 44th Street – 6th Floor
New York, NY 10017
T. (212) 209-3933
F. (212) 209-7102
info@jcpclaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

PEDRO VIVAR RAMIREZ, on behalf of himself            :       Case No.19-CV-7318
and others similarly situated,                       :
                                                     :
                              Plaintiff,             :       **FLSA COLLECTIVE**
                                                     :       **ACTION COMPLAINT**
        -against-                                    :
                                                     :
QFLORIST INC., NIKOLAOS BAZAS, STACEY                :       **Jury Trial**
FRANGIADAKIS, and CONSTANTINE BAZAS,                 :       **Demanded**
                                                     :
                              Defendants.            :

------------------------------------------------------------------------X

Plaintiff PEDRO VIVAR RAMIREZ (hereinafter, "Plaintiff"), on behalf of

himself and other similarly situated employees, by and through his undersigned attorneys,

Cilenti & Cooper, PLLC, files this Complaint against defendants QFLORIST INC.

("QFLORIST"), NIKOLAOS BAZAS, STACEY FRANGIADAKIS, and

CONSTANTINE BAZAS (the "Individual Defendants") (QFLORIST and the Individual

Defendants are collectively referred to herein as the "Defendants"), and states as follows:

## INTRODUCTION

1.      Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as

amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), he is entitled to recover from Defendants:

(a) unpaid overtime compensation, (b) liquidated damages, (c) prejudgment and post-judgment interest, and (d) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law, he is entitled to recover from Defendants: (a) unpaid overtime compensation, (b) liquidated and statutory damages, (c) prejudgment and post-judgment interest, and (d) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this judicial district.

## PARTIES

5.      Plaintiff is a resident of Bronx County, New York.

6.      Defendant, QFLORIST, is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 447 Columbus Avenue, New York, New York 10024.

7.      Defendant, QFLORIST, owns and operates a florist shop located at 447 Columbus Avenue, New York, New York 10024 (the "Flower Shop").

8.      Defendants NIKOLAOS BAZAS and STACEY FRANGIADAKIS are joint shareholders of QFLORIST, and are joint owners, officers, directors, managers, supervisors, and proprietors of QFLORIST, who participate in the day-to-day operations

2

of the Flower Shop, and acted intentionally and maliciously and are employers pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and are jointly and severally liable with QFLORIST.

9.     Defendant CONSTANTINE BAZAS is the manager of QFLORIST, who participates in the day-to-day operations of the Flower Shop, and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with QFLORIST.

10.     The Individual Defendants exercised control over the terms and conditions of Plaintiff's employment in that they have the power to: (i) hire and fire employees, (ii) determine and approve rates and methods of employee pay, (iii) determine and approve employee work schedules, (iv) supervise and control the work of the employees, and (v) create and maintain employment records.

11.     Upon information and belief, at least within each of the three (3) most recent years relevant to the claims herein, QFLORIST was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.

12.     Defendants employed Plaintiff to work as a non-exempt floral designer, for Defendants' Flower Shop from in or about 2002 through on or about November 2018.

13.    The work performed by Plaintiff was directly essential to the business operated by Defendants.

14.    Defendants knowingly and willfully failed to pay Plaintiff his lawfully earned overtime compensation in direct contravention of the FLSA and New York Labor Law.

15.    Plaintiff has satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

## STATEMENT OF FACTS

16.    Defendants NIKOLAOS BAZAS and STACEY FRANGIADAKIS, who are brother and sister, hire employees to work as managers and/or supervisors to participate in the day-to-day operation of the Flower Shop.

17.    Defendants NIKOLAOS BAZAS and STACEY FRANGIADAKIS hired Mr. Bazas's son, CONSTANTINE BAZAS, to work as manager and supervisor of the Flower Shop and, together the Individual Defendants were Plaintiff's direct supervisors. Through authority granted to them by his father and aunt, defendant CONSTANTINE BAZAS was primarily in charge of supervising the employees and establishing the employee's daily work duties. Defendant CONSTANTINE BAZAS also took part in the decisions concerning the hiring and firing of employees, and setting the rates of the employees' pay.

18.    Defendants NIKOLAOS BAZAS and STACEY FRANGIADAKIS themselves also actively participate in the day-to-day operation of the Flower Shop. For instance, Mr. Bazas and Ms. Frangiadakis personally hire and fire employees, supervise and direct the work of the employees, including the managers who also directly supervise

4

the employees, instruct the employees how to perform their jobs, and correct and/or reprimand the employees for any errors made.

19.    Although    defendants    NIKOLAOS    BAZAS    and    STACEY FRANGIADAKIS provides managers and supervisors with some authority to effectively run the day-to-day operations of the Flower Shop, they jointly create and implement all business policies and makes all crucial business decisions, including decisions concerning the number of hours the employees work, the amount of pay that the employees are entitled to receive, and the manner and method by which the employees are to be paid.

20.    In or about 2002, Defendants hired to work as a non-exempt floral designer.

21.    Neither at the time of his hire, nor any time thereafter, did Defendants provide Plaintiff with a written wage notice setting forth his regular hourly rate and corresponding overtime rate of pay.

22.    Plaintiff worked for Defendants in such capacity until in or about November 2018.

23.    Plaintiff worked over forty (40) hours per week.

24.    Throughout the relevant six (6) year limitations period beginning in August 2013 and continuing through the remainder of his employment in November 2018, Plaintiff's normally worked five (5) days per week and, although his work shift fluctuated slightly each day and week, his typical work shift consisted of ten and one-half (10½) to eleven (11) hours per day Monday through Friday from 9:00 a.m. until 7:30 p.m. or 8:00 p.m.

25.     Plaintiff would occasionally work six (6) days per week.

26.     During busy holiday seasons, such as Valentine's Day and Mother's Day, Plaintiff would work seven (7) days per week during the one (1) or two (2) weeks preceding those holidays, while often working in excess of twelve (12) hours per day.

27.     Plaintiff was required to punch a time clock or other time-recording device to track his hours worked.

28.     During the relevant six (6) year limitations period beginning in August 2013 and continuing through in or about December 2014, Plaintiff was not paid proper overtime compensation.  During this period, Plaintiff was paid, in cash, at the rate of $11 per hour straight time for all hours worked, and typically worked fifty-two and one-half (52½) to fifty-five (55) hours per week (and sometimes in excess thereof).  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

29.     Beginning in or about January 2015 and continuing through in or about December 2016, Plaintiff was not paid proper overtime compensation.  During this period, Plaintiff was paid, in cash, at the rate of $13 per hour straight time for all hours worked, and typically worked fifty-two and one-half (52½) to fifty-five (55) hours per week (and sometimes in excess thereof).  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

30.     Beginning in or about January 2017 and continuing through the remainder of his employment in or about November 2018, Plaintiff was not paid proper overtime compensation.  During this period, Plaintiff was paid, in cash, at the rate of $14 per hour

straight time for all hours worked, and typically worked fifty-two and one-half (52½) to fifty-five (55) hours per week (and sometimes in excess thereof). Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

31.     Upon paying Plaintiff his cash wages each week, Defendants failed to provide Plaintiff with wage statements setting forth, among other things, Plaintiff's gross wages, any deductions from Plaintiff's gross wages, and Plaintiff's net wages.

32.     Defendants knowingly and willfully operate their business with a policy of not paying Plaintiff and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in direct violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

33.     At all relevant times, upon information and belief, and during the course of Plaintiff's employment, Defendants failed to maintain accurate and sufficient wage and hour records.

## COLLECTIVE ACTION ALLEGATIONS

34.     Plaintiff brings this action individually and as class representative on behalf of himself and all other current and former non-exempt, non-managerial employees who have been or were employed by Defendants since August 6, 2013 until the close of the opt-in period (the "Collective Action Period"), and who were compensated at rates less than the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per workweek (the "Collective Action Members").

7

35.    The collective action class is so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are more than twenty (20) Collective Action Members who worked for the Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims.  Therefore, Plaintiff submits that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

36.    Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation.  Plaintiff has no interests that are contrary to or in conflict with those members of this collective action.

37.    This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

38.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it

virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

39.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiff and other Collective Action Members are:

a.     Whether Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA;

b.     Whether Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiff and the Collective Action Members;

c.     What proof of hours worked is sufficient where the employer fails in its duty to maintain wage and hour records;

d.     Whether Defendants failed to pay Plaintiff and the Collective Action Members overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

e.     Whether Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

f.     Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, costs and disbursements, and attorneys' fees.

40.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

41.     Plaintiff and others similarly situated have been substantially damaged by Defendants' wrongful conduct.

## STATEMENT OF CLAIM

### COUNT I
### [Violation of the Fair Labor Standards Act]

42.     Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "41" of this Complaint as if fully set forth herein.

43.     At all relevant times, upon information and belief, QFLORIST was and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and the Collective Action Members are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

44.     At all relevant times, Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA.

45.     Upon information and belief, at least during the most recent three (3) years relevant to the allegations herein, QFLORIST has had gross revenues in excess of $500,000.

46.     Plaintiff and the Collective Action Members were entitled to be paid at the statutory rate of time and one-half for all hours worked in excess of the maximum hours provided for in the FLSA.

47.     Defendants failed to pay Plaintiff and the Collective Action Members overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

48.     At all relevant times, Defendants had, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and the Collective Action Members for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

49.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the Collective Action Members at the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when they knew or should have known such was due and that non-payment of overtime compensation would financially injure Plaintiff and the Collective Action Members.

50.     As a result of Defendants' failure to properly record, report, credit and/or compensate its employees, including Plaintiff and the Collective Action Members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201 *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

51.     Defendants failed to properly disclose or apprise Plaintiff and the Collective Action Members of their rights under the FLSA.

52.     As a direct and proximate result of Defendants' violation of the FLSA, Plaintiff and the Collective Action Members are entitled to liquidated damages pursuant to the FLSA.

53.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and the Collective Action Members suffered damages in an amount not presently ascertainable of unpaid overtime compensation, an equal amount as liquidated damages, and prejudgment interest thereon.

54.     Plaintiff and the Collective Action Members are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

## COUNT II
## [Violation of the New York Labor Law]

55.     Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "54" of this Complaint as if fully set forth herein.

56.     At all relevant times, Defendants employed Plaintiff within the meaning of New York Labor Law §§ 2 and 651.

57.     Defendants knowingly and willfully violated Plaintiff's rights by failing to pay Plaintiff overtime compensation at rates of not less than time and one-half for each hour worked in excess of forty (40) hours in a workweek.

58.     Neither at the time of hiring, nor thereafter, did Defendants provide Plaintiff with written notice of his regular hourly rate of pay and corresponding overtime rate of pay, and his regularly designated payday, in contravention of New York Labor Law § 195(1).

59.     Defendants failed to furnish Plaintiff with a statement with every payment of wages listing gross wages, deductions, and net wages, in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations §§ 142-2.7.

60.     Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

61.     Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194(4), and New York State Department of Labor Regulations § 142-2.6.

62.     Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants his unpaid overtime compensation, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law § 663(1) *et al*. and § 198.

63.     Plaintiff is also entitled to liquidated damages pursuant to New York Labor Law § 663(1).

## PRAYER FOR RELEIF

**WHEREFORE**, Plaintiff, PEDRO VIVAR RAMIREZ, on behalf of himself and all similarly situated employees, respectfully requests that this Court grant the following relief:

(a)     An award of unpaid overtime compensation due under the FLSA and New York Labor Law;

13

(b)     An award of liquidated damages as a result of Defendants' failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

(c)     An award of liquidated damages as a result of Defendants' failure to pay overtime compensation pursuant to the New York Labor Law;

(d)     An award of statutory damages pursuant to the New York State Wage Theft Prevention Act

(e)     An award of prejudgment and post-judgment interest;

(f)     An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees; and,

(g)     Such other and further relief as this Court determines to be just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues.

Dated:  New York, New York
        August 6, 2019

Respectfully submitted,

CILENTI & COOPER, PLLC
*Attorneys for Plaintiff*
10 Grand Central
155 East 44th Street – 6th Floor
New York, NY 10017
T. (212) 209-3933
F. (212) 209-7102

By:

Giustino (Justin) Cilenti (GC2321)

14

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, Pedro Vivar Ramirez , am an employee currently or

formerly employed by Q Florist , and/or related

entities.  I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
7/26 , 2019

Pedro VilVar-R.

## NOTICE OF INTENTION TO ENFORCE SHAREHOLDER
## LIABILITY FOR SERVICES RENDERED

TO: Nikolaos Bazas and Stacey Frangiadakis

PLEASE TAKE NOTICE that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Pedro Vivar Ramirez and others similarly situated intend to charge you and hold you personally liable as one of the ten largest shareholders of QFlorist Inc. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporation for services performed by them for the said corporation within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as his attorneys, to make this demand on his behalf.

Dated: New York, New York
      August 6, 2019

                                  CILENTI & COOPER, PLLC
                                  *Attorneys for Plaintiff*
                                  10 Grand Central
                                  155 East 44th Street – 6th Floor
                                  New York, New York 10017
                                  T. (212) 209-3933
                                  F. (212) 209-7102

                                  By: _____
                                        Justin Cilenti